The judgment is reversed, and the cause remanded.

---

Ex parte MOORE. (No. 4882.)

(Court of Criminal Appeals of Texas. Jan. 30, 1918.)

Appeal from District Court, Smith County; J. R. Warren, Judge.

J. W. Moore, being charged with rape, was denied bail, and applied for writ of habeas corpus. Judgment reversed and bail granted.

Jones & Jones, of Kerrville, and Simpson, Lasseter & Gentry, of Tyler, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Relator applied for a writ of habeas corpus, and on the hearing was refused bail under a charge of rape.

The only contention before the court is the sufficiency of the evidence to justify such refusal of bail. It is unnecessary to discuss the evidence. A careful review of it, however, convinces us that relator is entitled to bail, and that the trial court erred in refusing it. The judgment therefore will be reversed and bail granted in the sum of $3,000. Upon the giving of proper bond, to be approved by the officer who holds relator in custody, he will be discharged.

The judgment is reversed and bail granted.

---

GODSHALK v. MARTIN et ux. (No. 1279.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 23, 1918.)

1. JUDGMENT ☞460(6)—EQUITABLE RELIEF —SHOWING OF MERITORIOUS DEFENSE.

In a suit to vacate a judgment for want of service of process, where the return of service and a recital in the judgment showed service, facts constituting a meritorious defense to the original cause of action should have been alleged.

2. JUDGMENT ☞17(1)—VALIDITY—NECESSITY OF PROCESS.

A judgment rendered without service of process is void, though the return shows legal service, and the judgment recites legal service, whether or not plaintiff was guilty of fraud or collusion in procuring a false return.

3. LIMITATION OF ACTIONS ☞39(7)—LIMITATIONS APPLICABLE — VACATION OF JUDGMENT.

The statute of limitations of four years applied to a suit to vacate a judgment for want of service of process.

4. LIMITATION OF ACTIONS ☞195(1), 199(1) — COMMENCEMENT OF ACTION — PRESUMPTIONS—QUESTIONS FOR JURY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1812, providing that civil suits are commenced by filing a petition in the office of the clerk of the court, where plaintiff filed his petition within the period of limitation, it could not be presumed, because the citation was not issued and served within a reasonable time, that he was guilty of such laches as made the statute of limitations apply; this being a question of fact for the jury.

5. PROCESS ☞149—RETURN OF SERVICE—IMPEACHMENT.

In a suit to vacate a judgment, plaintiff's testimony that he was not served with process and the testimony of his wife that she did not know whether he was served or not, but that on one occasion papers, the nature of which she did not know, were left for her husband in his absence, and that she told him about them, but she did not know whether he saw them or not, was insufficient to overcome the sheriff's return of service, as a return regular upon its face cannot be impeached by the evidence of one witness unless there are strong, corroborative circumstances.

6. APPEAL AND ERROR ☞548(5)—REVIEW— NECESSITY OF BILL OF EXCEPTIONS.

An assignment of error based upon the introduction of evidence cannot be considered when not supported by a bill of exceptions.

Appeal from District Court, Hartley County; Reese Tatum, Judge.

Suit by J. P. Martin and wife against A. L. Godshalk. From a judgment vacating the judgment in a prior action, defendant appeals. Reversed and remanded.

Bailey & Richards, of Dalhart, for appellant. Arthur Schlofman and R. Q. Stalcup, both of Dalhart, for appellees.

HALL, J. Appellant, Godshalk, filed suit in the district court of Hartley county, September 18, 1912, against J. P. Martin and wife, praying for judgment in the sum of $2,407.66 and to foreclose a vendor's lien on certain land described in the petition. This suit was numbered 773 upon the district court docket. On February 25, 1913, after the notices to serve nonresident defendants had been returned into court, judgment by default was rendered for plaintiff in accordance with the prayer of the petition, and in due time order of sale was issued, the land was sold, and plaintiff became the purchaser at said sale. January 30, 1917, plaintiff, Godshalk, filed in said cause his motion, praying that a certain clerical error in the record entry of said judgment be corrected, and after due notice of this motion to the defendants, an order was entered correcting said judgment. February 20, 1917, appellees, as plaintiffs in this action, filed their petition, praying that the former judgment in said cause No. 773 and as corrected be vacated and held for naught, alleging that the appellee, J. P. Martin, had never been served with citation or any other character of notice of said suit, and had made no appearance nor waived service of process therein. After hearing by the court without a jury, judgment was rendered setting aside the former judgment in cause No. 773, and opening same for further trial. To this action and judgment the appellant excepted, gave notice of appeal, and the matter is properly before us for review.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The first assignment of error is that the court erred in overruling the defendant's special exception, and in not requiring plaintiffs, Martin and wife, to allege facts constituting a meritorious defense to the original cause of action against them, in suit No. 773. The rule in cases of this character, as announced by Judge Williams, in August Kern Barber Supply Co. v. Freeze et al., 96 Tex. 513, 74 S. W. 303, is:

"It has always been the rule that, when a judgment is sought to be reopened for any cause, in order to permit a defense to be made which the defendant was prevented from proving upon the trial in which the judgment was obtained, the nature of the defense must be shown to the court. It is true that in some of the cases in which this doctrine was applied the judgment was attacked because the party seeking injunction had not in fact been served, but this was not made to appear from the face of the record as in the cases first discussed, but was asserted upon evidence outside the record. In such cases the rule, at least with reference to domestic judgments of the superior courts, is that the record is conclusive evidence of the fact of service, and the judgment cannot be attacked collaterally upon evidence aliunde, but only by direct proceeding to set it aside and let in defenses. To this class of cases the rule that the party seeking equitable relief must show meritorious defense to the cause of action, in order to obtain the intervention of equity, has been applied, whether properly or not, may admit of differences of opinion."

The case before us is one in which, from the return on the notice to serve nonresident defendants, and from the recital in the judgment, it appears that Martin was duly served. As said by Hodges, J., in Walker v. Chatterton et al., 192 S. W. 1085:

"When the record discloses that the judgment attacked is valid upon its face, it devolves upon the parties seeking its annulment to show, not only no service of citation or appearance, but that he has a good defense to the suit."

After a review of the authorities, this court, through Mr. Justice Boyce, in Union Pacific Ry. Co. v. Miller, 192 S. W. 358, said:

"Some confusion at one time existed in the decisions of this state as to whether or not in this character of case it would be necessary for one seeking to enjoin a judgment alleged to be void to allege and prove that he had a meritorious defense to the original cause of action on which the judgment was rendered. Out of this confusion a rule of decision, based on a distinction between judgments where the invalidity appears from the face of the record and those where the invalidity is only made to appear by extrinsic evidence, has been evolved, which, is claimed, will reconcile the apparent conflict. Whether this distinction may with good reason be applied to this class of cases or not, it seems to have obtained recognition by the Supreme Court, and the rule based on this distinction seems to be now well settled. [Citing authorities.] The rule announced by these decisions may be stated thus: Where an injunction is sought against the execution of a judgment alleged to be void, it is not necessary to show a meritorious defense to the original cause of action in those cases where the invalidity of the judgment appears upon the face of the record; but, if extrinsic evidence is necessary to establish such invalidity, then it will be necessary for the plaintiff seeking the injunction to show a meritorious defense."

This proceeding is a direct attack upon the judgment and comes within the rule announced in cases where it is sought to enjoin the judgments because of alleged invalidity. For the reasons stated we think the court erred in overruling the exception. San Bernardo Townsite Co. et al. v. Hocker, 176 S. W. 645; McCaulley v. Western National Bank, 173 S. W. 1001; Western Lumber Co. v. Chicago, Rock Island & Gulf Ry. Co., 180 S. W. 644.

[2] The proposition urged under the second assignment of error is: The return upon the notice showing legal service and the judgment reciting legal service, unless it be shown that the plaintiff was guilty of fraud, connivance, or collusion, in procuring a false return, appellees should not prevail in this action. In our opinion, this proposition is not sound. If there was in fact no service, and sufficient proof is produced upon that issue, the judgment is void, whether or not plaintiff was guilty of fraud or collusion in procuring a false return. Without service the court acquires no jurisdiction of the defendant, and can render no decree affecting his rights. Kempner et al. v. Jordan, 7 Tex. Civ. App. 275, 26 S. W. 870.

[3, 4] By the third assignment appellant raises the issue of limitation. As stated, the suit to set aside the judgment in cause No. 773 was filed February 20, 1917, four days prior to the expiration of the four-year period of limitation. It appears that process did not issue thereon until March 31, 1917, and was not served upon appellant until the 20th day of June, 1917, and that no evidence was offered upon the trial tending to explain the delay in the issuance and service of process after the petition was filed. The statute of four-year limitation applies to a proceeding of this character. Kimmell v. Edwards et al., 194 S. W. 168, and authorities there cited. Article 1812, Vernon's Sayles' Civil Statutes, provides that civil suits in the district and county courts are commenced by filing the petition in the office of the clerk of such court. Plaintiff having filed his petition in this case within the period of limitation, we cannot presume because the citation was not issued and served within a reasonable time that he was guilty of such laches as would make the statute of limitations apply. This has uniformly been held to be a question of fact for the jury. G., C. & S. F. Ry. Co. v. Flatt, 36 S. W. 1029; Panhandle & Santa Fé Ry. Co. et al. v. Hubbard, 190 S. W. 793. This issue having been determined by the trial judge against the appellant, we overrule the assignment.

[5] By his fourth assignment appellant insists that the evidence is insufficient to impeach the officer's return upon the notice to serve nonresident defendant. Martin himself testified that the sheriff's return was false in that no personal service was made upon him. His wife, Mrs. Rachael Martin,

upon this issue testified, in substance, as follows:

"I remember an occasion some time about the 2d of November, or approximately that date, when a gentleman came to our home during the absence of Mr. Martin and left some papers. He just drove up and asked if this was where Mr. Martin lived. I said, 'Yes,' and he said, 'Here are some papers for Mr. Martin,' and I said, 'Mr. Martin is not at home,' and he said, 'I will just leave them,' and I laid them up, and when he came home the next day I told him where they were, but I am not sure—I don't know whether he looked at them. I didn't look at them. Whenever he came I called his attention to them. I don't know what was in them. I never did find out what the papers were about. Mr. Martin always attended to his business affairs. Yes; I guess they were the same papers that Mr. Martin referred to in his testimony. Those were the only papers that were ever handed to me. * * * I didn't know who that gentleman was. He never told me who he was. He didn't tell me that there was papers or process in a suit of any kind; just said they was papers for Mr. Martin. I don't know how many papers were contained in that package; never heard Mr. Martin speak about that. As far as I know, that was the only character of papers that was ever brought there in that suit. If any character of papers that were called citations or notices of process were ever served upon Mr. Martin in the suit that we have referred to, I didn't know anything about it. I have no knowledge of it. Yes, sir; I have related to the court all that happened about the delivery of those papers. He didn't tell me his name, and he didn't make any inquiry about Mr. Martin's initials, as to whether that was the Martin or not; never asked what Martin or anything about it; didn't try to identify Mr. Martin; didn't ask if this was the Martin who came from Texas. * * * No, sir; I didn't know that those papers related to this place; didn't know a thing about it; never opened the papers; never looked at them. He never said anything about any papers being there for me. I told Mr. Martin where the papers were. I told him the papers were on the shelf, and he went and got them, I suppose. I could not swear that he got them, because I didn't watch him. I suppose he did. I didn't see him open them. I never afterwards saw the package, and I didn't care for them. I might have seen the package after that, but didn't have enough interest to look through them. I suppose the envelope was opened. I didn't open it. I have no relations whatever up in that country [Missouri]; didn't know the man who brought the papers. * * * Mr. Martin didn't mention to me that foreclosure proceedings had been started in Texas that I remember of. I cannot be positive about that. * * * I do not know whether there were two or one papers in this package; I don't know a thing about it; don't know whether Mr. Martin was served or not. Those papers were handed to me. I don't know whether Mr. Martin was served or not. He never said anything about it; never said anything about those papers either."

Sheriff Hawk, who made the return, did not testify. The default judgment recites that the defendants were duly served, and the return made by Hawk is sufficient to show proper service, and is sworn to by him. No evidence except that of Martin himself was introduced to show that other process was not served upon him. The rule is established in this state that a return, regular upon its face, cannot be impeached by the evidence of one witness unless there are strong corroborative circumstances. It is clear that the testimony of Mrs. Martin does not tend to show that proper service was never made upon her husband. The substance of her evidence is that she knows nothing whatever about it. In the absence of some corroborative circumstance, we think the court erred in holding Martin had not been served. In support of the recital in the judgment we must presume that proper service was made and we sustain this assignment. Pierce-Fordyce Oil Ass'n v. Staley, 190 S. W. 814; Gallagher v. Teuscher, 186 S. W. 409.

[6] We find a cross-assignment in the record by appellees, based upon the introduction of certain evidence, over appellees' objections. This assignment is not supported by a bill of exceptions, and cannot be considered.

For the reasons stated, the judgment is reversed and remanded.

HUFF, C. J., not sitting, being absent in Austin, serving with committee of judges, passing on applications for writs of error.