**BANANA SUPPLY CO. et al. v. DRISKELL.**

**No. 12427.**

Court of Civil Appeals of Texas. Galveston.

June 26, 1952.

Butler, Binion, Rice & Cook, Frank J. Knapp, William B. Henley, Jr., of Houston, for appellants.

Helm & Jones, Albert P. Jones, of Houston, for appellee.

CODY, Justice.

This is a plea-of-privilege case. Appellee brought this suit in one of the district courts of Harris County against appellants, husband and wife, who did business under the name of Banana Supply Company, to recover damages on account of the following accident, which happened in Harris County on August 17, 1950: One Jiminez, an employee of appellants, acting in the scope of his employment, was driving toward Houston on Highway 290 in a 1947 G. M. C. tractor, to which a trailer was attached, and in which he was transporting a load of potatoes. On the highway about three miles from Fairbanks toward Houston appellants' driver met appellee who was driving his automobile from Houston, where he was employed, toward Fairbanks, where he lived. When, or just before, the two vehicles passed, the outside wheel of one of the dual wheels on the right side of appellants' trailer became unfastened and rolled down the highway behind the trailer and collided with appellee's automobile going in the opposite direction, causing, appellee alleged, the damages he sued to recover.

Appellants duly filed their plea-of-privilege to be sued in Bexar County, where they resided. Appellee controverted their plea in due form, relying on Subd. 9, Art. 1995, Vernon's Ann.Civ.St., to retain venue in Harris County. The venue contest was tried by the court without a jury and he rendered judgment overruling appellants' plea. No conclusions of fact or law were requested and none have been filed.

From the court's judgment overruling their plea-of-privilege, appellants prosecute this appeal, predicated upon three points, presenting: That the evidence was insufficient (1) to show that an affirmative trespass was committed by appellants or their servant in Harris County, or (2) to show that a crime or an offense had been committed by appellants or their servant in Harris County, or (3) to show that there was any causal connection between any affirmative trespass committed by appellants or their servant in Harris County, and the accident in question.

We note from the statement of facts that, aside from certain formal evidence which we deem it unnecessary to refer to, the only evidence introduced consisted of (1) a letter from Cooper Dewey, Sr., resident engineer of the Texas Highway De-

partment, addressed to appellee's counsel and which was admitted by consent to show a portion of U. S. Highway 290 over which appellants' driver passed prior to the accident, (2) the testimony of appellee, and (3) a portion of the deposition of appellants' driver, Jiminez, introduced by appellee.

The letter from Mr. Dewey disclosed that on the 17th of August, 1950, certain repair work was done on Highway 290 between Waller and Hockley (which are towns between Hempstead and Fairbanks), which necessitated traffic passing over the highway between said towns to detour onto the shoulder of the highway where the work was under way. That this section of the highway so under repair was approximately a mile and a half in length.

■ The portion of appellants' driver's deposition introduced by appellee showed that there was a governor on appellants' truck which limited its top speed to approximately 42 miles per hour; further, that according to his instructions, he checked his truck-trailer at intervals of from 50 to 75 miles; and that prior to the accident he had last checked his truck-trailer at Hempstead and the wheels were then found to be in good condition. (Hempstead, we judicially know, is the county seat of Waller County, and approximately 50 miles distant from Houston). According to appellants' driver, he did not know that the wheel had become detached or that it had collided with appellee's automobile until after he was overtaken on the highway by appellee and so notified.

After the accident the driver found that the lugs of the wheel which became detached had snapped off and were not worn down. He testified that it was the duty of the company mechanic at San Antonio to check over the lugs at fifteen-day intervals and if he found them worn down or loose he put in new ones. Appellants' driver further testified that he did not know what caused the lugs to snap off.

The following questions which had been asked appellants' driver by appellee's coun-sel and his answers thereto, were introduced into evidence from the aforesaid deposition:

"Q. And you figure that the rough shoulder there and jumping around may have sheared the bolts there? A. I think that that is what caused it—I don't know.

"Q. Well, I realize you don't know. .

\* \* \* \* \* \*

"Q. That is the best way you can figure out they came off? A. Yes, sir.

\* \* \* \* \* \*

"Q. Did it seem rough to you? A. It was pretty rough.

"Q. How fast can you drive on that shoulder? A. Well, you don't drive that truck fast on the shoulders there. You stop and start your trucks as slow as you can to go by that piece there, that shoulder there.

\* \* \* \* \* \*

"Q. What I am getting at and I want to make it clear, is that you didn't stop and check all of your lugs and your tires after you got back up on the highway until this accident happened? You checked your tires before you got off on the shoulder, is that correct? A. I was looking for a station so that I could check them again, sir, on account of that was a pretty rough place. Before I got to that filling station to where I was going to check them, that is when Mr. Driskell came and stopped me."

■ We also take judicial notice that there are a number of small towns between Hockley and Fairbanks.—The wheel did not come off until the driver had continued on beyond Fairbanks toward Houston for a distance of about three miles.

Appellee relies upon some 17 grounds of negligence which he plead. It would require too much space to copy them into this opinion, so we have undertaken to summarize them in the following four categories: (1) That appellants' truck driver was operating their vehicle along a public highway at a rate of speed in excess of what

a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances, (2) that appellants' driver violated the law in permitting a portion of the vehicle to be on the left side of the highway, (3) that appellants were liable for their driver's negligence in permitting a defective trailer to be on a public highway in violation of the law, and (4) that they were liable for the operation of the vehicle upon the public highway with a wheel which was known to their employee, or by the exercise of ordinary care could have been known to him, to be defective and not in operating condition.

Appellants make no contention that appellee's pleadings are not sufficient to allege an offense and an act of affirmative negligence committed by their driver in Harris County so as to fix venue in Harris County under Subd. 9, Art. 1995. But they strongly urge that the evidence adduced in support of said allegations failed to support the pleading so as to show either an offense or an act of affirmative negligence committed by their driver in Harris County.

█ The evidence, we think, was wholly insufficient to support appellee's allegations that the driver of appellants' vehicle committed a violation of the law against permitting some portion of a truck or trailer to be on the left side of the highway. The facts proved to the effect that one of dual wheels became detached from the trailer and then by force of momentum, unknown to the driver, was caused to cross over onto the said driver's right and run unto appellee's automobile which was approaching on its proper side of the road, did not constitute a violation of the law in question.

██ We believe that the facts proved failed to show a violation of the law against permitting a defective trailer to be on the highway. The facts proved were, as indicated above, that the trailer had been inspected at Hempstead, which is some 50 miles distant from Houston, and found to be in good condition. The proof further showed that the driver could only account for the wheel becoming detached from the trailer because of the roughness of the shoulder over which it had been driven and the driver testified that due to the roughness of the shoulder he had intended at a convenient time and place, to inspect to see if such detouring resulted in damaging the truck-trailer. The mere occurrence of a vehicle being or becoming defective while operated on the highway does not constitute *permitting* same to be on the highway in defective condition.

█ There is no contention here that appellants' vehicle was driven in excess of the lawful rate of speed nor is it contended that 42 miles an hour was an excessive rate of speed for an automobile to be driven on the highway in question at the point where the wheel became detached.— Whether or not the evidence was sufficient to support a finding that appellants' driver was guilty of committing a "trespass" in Harris County, must be examined in the light of the meaning of "trespass" as used in Subd. 9, Art. 1995. The meaning of the committing of a "trespass", as used in Subd. 9, Art. 1995, was determined by the Supreme Court in Ricker, Lee & Co. v. Shoemaker, 81 Tex. 22, 16 S.W. 645, decided in 1891, and since that time the courts of this State have steadfastly attempted to adhere to that construction. It was there held that "trespass", as used in said subdivision, "was intended to embrace only actions for such injuries as result from wrongful acts willfully or negligently committed, and not those which result from a mere omission to do a duty." 81 Tex. at page 26, 16 S.W. at page 646. In the same year the Supreme Court approved the holding made in Connor v. Saunders, 81 Tex. 633, 635, 17 S.W. 236 to the effect that the allegations made in a plaintiff's petition which charged that his injury resulted either from his employer's defective machinery or from the negligence of his employer's vice principal in performing some duty encumbent upon him, was insufficient to charge the commission of a trespass within Subd. 9, Art. 1995. In Meredith v. McClendon, 130·

Tex. 527, 111 S.W.2d 1062, the Supreme Court reviewed the outstanding cases in which the construction made or approved in the Ricker and Connor cases, supra, had been applied up until that time, and reaffirmed those holdings. In Barron v. James, 145 Tex. 283, 198 S.W.2d 256, the question was again before the Supreme Court and the court there held that failure on the part of the driver of a bus to perform his duties of properly controlling it, or to keep a proper lookout or sound the horn, or reduce the speed, or in not stopping before a collision, were mere omissions of duty and constituted passive negligence and did not constitute a trespass within the purview of Subd. 9, Art. 1995.

■ This contest is concerned with the right of appellee to maintain venue in Harris County and not concerned with his right to hold appellants liable for the injury which resulted from a wheel of appellants' vehicle becoming detached and colliding with him. There was evidence of facts which would warrant the conclusion that appellee's injury resulted from the failure of appellants' driver to inspect the trailer after the driver had detoured over the shoulder of the highway and so would be sufficient, upon a trial on the merits, to convict the driver of an omission to do a duty, and establish the liability of his employer. But such evidence upon a venue contest would be insufficient to establish the venue facts necessary to show that the injury was the result of a "trespass." Appellee does not disagree with this proposition. He insists, however, that there is evidence also sufficient to support the conclusion that the driver continued to drive the vehicle upon the highway after he had knowledge of the trailer's defective condition, or at least had knowledge of facts from which a jury was entitled to conclude that, in the exercise of ordinary prudence, he would have known of such defective condition.

■ We agree with appellee's position that, had the evidence established that appellants' driver continued to operate the vehicle after it was established that he knew it was defective, this would constitute a "trespass." And if any facts had been proved from which it could have been reasonably inferred that he had knowledge that the vehicle was defective after it had been detoured, it would be our duty to sustain the court's order on the presumed finding that the driver had such knowledge, and continued to drive the vehicle, and so was guilty of a trespass, from which it could have been found appellee's injury resulted.

■ However, the evidence here affirmatively disclosed that the driver did not know that his vehicle had become defective, when he continued to operate it upon the highway after he got back thereon from its shoulder. The most favorable inference from appellee's standpoint that can be drawn is that the driver had knowledge of facts which imposed on him the duty to inspect the vehicle to see if it had become damaged, before he continued to operate it, and which he omitted to do. Thus, however viewed, or however plead, appellee's action is one to recover damages which proximately resulted from mere omissions of duty on the part of appellants' driver, which constituted passive negligence, and did not constitute a "trespass" within Subd. 9, Art. 1995.

We sustain appellants' points, reverse the judgment, and here sustain appellants' plea of privilege, and order the case transferred to a proper district court of Bexar County, and for that purpose direct the Clerk of the court below to make up a proper transcript, etc.